UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 17-20184-CIV- GOODMAN

[CONSENT CASE]

MATTHEW B. BRENOWITZ,

    Plaintiff,
v.

IMPLANT SEMINARS, INC., et al.,

    Defendants.
_____/

## ORDER APPROVING FLSA SETTLEMENT AND CLOSING CASE

This Order addresses a straightforward issue: whether a court may approve as fair a settlement agreement in a Fair Labor Standards Act ("FLSA") case in which counsel receives a contingency contract percentage which is more than double the amount he would otherwise be entitled to under a straightforward lodestar analysis calculated by simply multiplying the hourly rate by the number of hours.

Based on the unique facts and legal issues underlying this case, the Court finds that this settlement agreement is reasonable. The rationale is outlined below.

Plaintiff brought an FLSA case against Defendants, asserting both retaliatory discharge and failure to pay overtime wages claims. [ECF No. 1]. At the mediation before the Undersigned, the case settled. [ECF No. 43]. The parties did not at that time

advise the Court about the allocation of the settlement proceeds between the two claims, nor did they give a breakdown of how the proceeds would be divided between Plaintiff and his counsel. The parties then consented to the Undersigned's full jurisdiction, and United States District Judge Joan A. Lenard referred the case to me for further proceedings, including trial, entry of final judgment, and a fairness determination. [ECF Nos. 44; 45].

After the Court reviewed Plaintiff's counsel's retainer agreement and billing records, the Court held a fairness hearing on July 18, 2017, where the Court heard from counsel regarding the fairness of the FLSA settlement. [ECF Nos. 48-1; 48-2; 49].

At the hearing, Plaintiff's counsel stated that (1) the total settlement amount is $125,000; (2) costs are $490; (3) the attorney's fees Plaintiff's counsel seeks to recover is $49,510; and (4) Plaintiff will recover $75,000. The total amount of hours billed at Plaintiff's counsel's hourly rate, as indicated by the billing records, is $20,497. [ECF No. 48-1, p. 10]. The requested attorney's fees are significantly higher than the hours billed because the retainer agreement contained a 40% contingency fee provision. [ECF No. 48-2]. At the hearing, defense counsel had no objection to the amount of fees Plaintiff's counsel seeks to recover.

The Undersigned then requested supplemental memoranda on whether, under the factors set out in *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir. 1982), a district court may approve an FLSA settlement as fair when the plaintiff's counsel

seeks to recover a contingency fee award that would substantially exceed the amount of fees the attorney would otherwise receive on an hourly basis. [ECF Nos. 50; 51]. Plaintiff's counsel submitted a memorandum in compliance with the Court's Order and a declaration which included Plaintiff's counsel's resume, training, and experience. [ECF Nos. 52; 52-1].

Defense counsel filed a response, agreeing with Plaintiff's counsel's contention "that the settlement did, in fact, contemplate both the overtime and retaliatory discharge claim[s], such that a direct application of *Lynn's Food* may not be entirely accurate," and demurring to the fee arrangement agreed upon between Plaintiff and Plaintiff's counsel. [ECF No. 53, pp. 2-3].

In general, the minimum wage and overtime provisions of the FLSA[1] are mandatory and not subject to negotiation or bargaining between employers and employees. *See Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945). However, there are two ways employees may settle and waive a claim against their employer for unpaid minimum wages or overtime pay under the FLSA: (1) if the payment of unpaid minimum wage/overtime pay is supervised by the Secretary of Labor; or (2) in a private lawsuit brought by an employee, if the parties present the district court with a proposed settlement and the court enters an order approving the fairness of the settlement.

---

[1] 29 U.S.C. § 201 *et seq.*

29 U.S.C. § 216(c); *Lynn's Food Stores*, 679 F.2d at 1353; *see also Schulte, Inc. v. Gangi*, 328 U.S. 108 (1946).

An employee may settle and release FLSA claims against his employer without the supervision of the Secretary of Labor if all of the following conditions are met: (1) the settlement occurs in an adversarial context; (2) there are issues of FLSA coverage and/or computations actually in dispute; and (3) the district court enters an order approving the settlement after scrutinizing the fairness of the settlement. *Lynn's Food Stores*, 679 F.2d at 1354.

Here, the settlement involves both overtime wages and retaliatory discharge claims. For the overtime claim, the Court must review the settlement for fairness. However, court approval of an FLSA retaliatory discharge settlement is not required. *Hernandez v. Iron Container, LLC*, No. 13-22170-CIV, 2014 WL 633848, at *1-2 (S.D. Fla. Feb. 18, 2014). Indeed, only when the settlement of the retaliation claim affects the fairness of the settlement of the wage claims will the court review the retaliatory discharge claim for fairness. *Id.; Dunbar v. Wolf Bay Lodge, Inc.*, No. CV 15-00265-CG-M, 2015 WL 6394515, at *1 n.2 (S.D. Ala. Oct. 22, 2015). Here, the Court finds that it is necessary to analyze whether the settlement as a whole is fair, regardless of the claims asserted, based on the proposed contingency fee award.

In FLSA cases, the Eleventh Circuit has questioned the validity of contingency fee agreements. *Silva v. Miller*, 307 F. App'x. 349, 351 (11th Cir. 2009) (rejecting forty-percent

contingency fee agreement in the settlement of FLSA case, noting that the FLSA provides for reasonable attorney's fees and holding that parties will not be permitted to contract around such provisions in derogation of the FLSA); *Zegers v. Countrywide Mortg. Ventures, LLC*, 569 F. Supp. 2d 1259, 1266-68 (M.D. Fla. 2008) (holding that a forty-percent contingency fee agreement was "not consistent with the purposes of the FLSA"); *see also Skidmore v. John J. Casale, Inc.*, 160 F.2d 527, 531 (2d Cir. 1947) ("We have considerable doubt as to the validity of the contingent fee agreement; for it may well be that Congress intended that an employee's recovery should be net[.]")).

However, at least one Southern District of Florida Court has held that *Silva* and *Zegers* did not "dictate[] the conclusion that [a] forty-percent [contingency award] is *per se* unreasonable under the FLSA." *Aguirre v. S. Fla. Multispecialty Assocs. LLC*, No. 14-CIV-21660, 2014 WL 12539725, at *1 (S.D. Fla. Aug. 19, 2014). The *Aguirre* Court summarized, "[p]ut simply, the Court's duty is to assess the reasonableness of such fees under the circumstances." *Id.* The Undersigned finds the *Aguirre* Court's interpretation of the *Silva* and *Zegers* cases persuasive. There is no flat-out rule that contingency arrangements in FLSA cases are always automatically unreasonable, presumptively unreasonable, or presumptively reasonable. Instead, the reasonableness of the contingency arrangement will depend on the specifics of the particular case. Thus, the Court will follow a similar approach in this case when analyzing whether this 40% contingency fee award is reasonable.

The Court, however, is "mindful of the strong presumption in favor of finding a settlement fair." *Romeo v. Colonial Imports, Ltd.*, No. 6:16-cv-876, 2016 WL 7644854, at *2 (M.D. Fla. Dec. 15, 2016) (citing *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)).

The Eleventh Circuit in *Silva* explained that the "FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." 307 F. App'x. at 351-52. Thus, under this scenario, a Court may deem a contingency fee award unreasonable if a plaintiff is sacrificing a portion of his unpaid wages recovery to fund plaintiff's attorney's fees.

However, in this case, Plaintiff's proposed recovery **exceeds** the amount of unpaid wages he sought in his statement of claim. In Plaintiff's statement of claim, he sought $58,881.12 for overtime pay. [ECF No. 11]. At the fairness hearing, Plaintiff's counsel stated that Plaintiff would be recovering $75,000, which exceeds the statement of claim amount. Based on this, Plaintiff is, without question, *not* sacrificing his recovery to fund his counsel's attorney's fees. Furthermore, the record is clear that Plaintiff agreed to a contingency fee arrangement when he signed his counsel's retainer agreement. [ECF No. 48-2]. In addition, Plaintiff specifically agreed to the allocation of settlement proceeds in this case, including the portion of proceeds set aside for his counsel's fees based on the 40% contingency arrangement.

The Court also notes that Plaintiff's retaliation claim was plagued with significant legal hurdles, which means that Plaintiff's counsel assumed the risk of recovering nothing if those hurdles were not cleared.

For example, Plaintiff's employer did not allegedly retaliate against Plaintiff for something *Plaintiff* did, such as complaining about his pay. Instead, Plaintiff's theory was that his employer retaliated against his girlfriend, who was also employed by Plaintiff's employer, by terminating Plaintiff, because *she* raised a complaint. Plaintiff claimed that he was fired because of his girlfriend's wage claim, not as a result of his *own* wage claim. Plaintiff's theory is that the employer could not, as a practical matter, retaliate against his girlfriend because she had already resigned. Therefore, under Plaintiff's theory, the Defendant employer had no viable retaliation options other than retaliating against Plaintiff.

But Plaintiff did not submit persuasive legal authority supporting the viability of this atypical, attenuated retaliation theory. Because of this, the Court finds that Plaintiff's counsel took a significant risk when agreeing to take this retaliation case as it was more than a mere possibility that he would recover no fees if the case did not settle. Therefore, under the specific, unique facts of this case, the Court finds that the contingency arrangement is reasonable.

In addition, Plaintiff had to confront the additional issue of whether 29 U.S.C. § 215(a)(3) applies to a retaliation claim based on a labor-related lawsuit filed in another

7

country. Plaintiff did not present convincing legal authority on this significant issue at the mediation.

Beyond that, Plaintiff also faced affirmative defenses which, if successful, would eliminate the possibility of recovering for unpaid overtime. Specifically, Defendants asserted two exemptions: the administrative exemption and the creative exemption.

Accordingly, the Court considered the factors outlined in *Lynn's Food Stores* and also considered the strengths of the parties' cases; the factual positions of the parties; the existence (or lack thereof) of documents supporting or corroborating the parties' positions; the strengths and weaknesses in the parties' respective cases; and the parties' desire to resolve the dispute sooner, rather than later.

The Court finds that the settlement here represents a genuine compromise of a bona fide dispute. Plaintiff will receive more than his unpaid wage claim and he therefore did not discount or compromise it to fund his attorney's contingency-based fees. All parties involved -- Plaintiff, his counsel, and Defendants -- agreed to settle as a result of reasonable strategic and financial considerations, including the novel fact pattern and unusual legal issues. Moreover, the fees allocated to counsel, while greater than the lodestar, are designed to address the substantial risk which counsel undertook when agreeing to file this atypical lawsuit. *See Hart v. RCI Hosp. Holdings, Inc.*, No. 09 Civ. 3043 (PAE), 2015 WL 5577713, at *14 (S.D.N.Y. Sept. 22, 2015) (finding multiplier of 1.08 "quite low relative to the multipliers in many cases in which fees have been

approved in this District"); *Lizondro-Garcia v. Kefi LLC*, No. 12 Civ. 1906 (HBP), 2015 WL 4006896, at *10 (S.D.N.Y. July 1, 2015) (finding "award of $105,000 or one-third of the fund—a 1.68 multiplier of the lodestar calculation and 1.52 multiplier of plaintiffs' counsel's stated hourly rates"—reasonable in light of quality of counsel, time and labor expended, risks of litigation, and litigation's magnitude and complexity); *Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014) (awarding fee constituting 2.28 multiplier of modified lodestar calculation and noting that "multiplier near 2 compensates [plaintiffs' counsel] appropriately" for "the risk associated with contingent fees in FLSA cases"); *see also Escobar v. Fresno Gourmet Deli Corp.*, No. 16 Civ. 6816, 2016 WL 7048714, at *3-5 (S.D.N.Y. Dec. 2, 2016) (approving FLSA settlement where the fee award was greater than the modified lodestar).[2]

---

[2] Compare the Southern District of New York cases cited above with *Figueroa v. RSC Corp.*, No. 6:10-CV-842-ORL-22, 2011 WL 1811684, at *3 (M.D. Fla. Apr. 26, 2011), *report and recommendation adopted*, No. 6:10-CV-842-ORL-22, 2011 WL 1837795 (M.D. Fla. May 12, 2011) (finding that "there is simply no way to justify a fee that is in excess of the lodestar, even as calculated by the parties.").

In *Figueroa*, the plaintiff's counsel sought to recover under an FLSA settlement a contingency amount that exceeded full compensation for the plaintiff's counsel's time. *Id.* Based on this, and the fact that the plaintiff compromised his claim considerably, Magistrate Judge Baker found that"[s]uch an arrangement smacks of self[-]interest at the Plaintiff's expense." *Id.* However, in this case, Plaintiff's recovery is in excess of the amount stated on his statement of claim. Thus, *Figueroa* is inapplicable because Plaintiff's counsel did **not** act here with self-interest to Plaintiff's detriment.

The Undersigned reviewed Plaintiff's counsel's billing records. [ECF No. 48]. The settlement is reasonable not just when viewed in light of Plaintiff's claims against Defendants (and Defendants' defenses to those claims), but also in light of the amounts that Plaintiff and his counsel will each receive, given that the 40% contingency arrangement is reasonable (under the unusual circumstances of this case) and duly accepted by Plaintiff.

The Court finds that the settlement here occurred in an adversarial context and that there are genuine coverage and computation issues in dispute. The Court further finds that the settlement reached by the parties represents a reasonable compromise by both sides and is fair and reasonable.

In doing so, the Undersigned emphasizes that Plaintiff is not compromising his wage claim, which means that "the settlement is necessarily a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Romeo*, 2016 WL 7644854, at *3 (citing *Lynn's Food Stores*, 679 F.2d. at 1354-55); *see also Natera v. Mastercorp of Tenn., Inc.*, No. 6:08-cv-2088-Orl-22DAB, 2009 WL 1515747, at *2 (M.D. Fla. June 1, 2009) (finding "[f]ull recompense of the [FLSA] damage claim is *per se* fair and reasonable"). To be sure, Plaintiff's counsel will be receiving more than twice the lodestar, but, as noted above, these multipliers are often approved when the risks are substantial.

Accordingly, it is **ORDERED** and **ADJUDGED** that the parties' settlement agreement is fair and reasonable, the settlement is **APPROVED,** and this action is

**DISMISSED WITH PREJUDICE**. The Court reserves jurisdiction to enforce the terms of the parties' settlement. The Clerk is directed to **CLOSE THIS CASE** and deny all pending motions as moot.[3]

**DONE AND ORDERED** in Chambers at Miami, Florida, on August 10, 2017.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record

---

[3] This Order does not adopt an across-the-board rule authorizing fees in FLSA cases pursuant to a contingency provision in a retainer agreement. Instead, it uses a case-specific approach. The mere fact that this Court approved a contingency award in excess of the lodestar here does not, by any stretch, suggest that similar approvals will be forthcoming in other FLSA cases.